## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-CR-533 (RC)** |
| **KHAYAN GARNER,**<br>**also known as**<br>**KHY GARNER,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF
## PRETRIAL DETENTION OF DEFENDANT KHAYAN GARNER

In April 2024, while running a Kik group that exalted a notorious child rapist and was dedicated to the exchange of child pornography, Defendant Khayan Garner began discussing child sex abuse with another man on Kik.  Unbeknownst to the defendant, that man was an FBI Online Covert Employee (OCE).  On June 26, 2024, and again on July 14, 2024, the defendant sent the OCE links to MEGA[1] folders containing large amounts of graphic child pornography.

A federal grand jury has returned an indictment charging the defendant with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1), for the June 26, 2024, act of distribution.  The United States respectfully submits this memorandum in support of its motion that the defendant remain detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) (crime of violence).  Because the defendant poses an unmitigable risk to community safety, this Court should order that he remain detained pending trial.

---

[1] MEGA is an end-to-end encrypted online file sharing site based in Auckland, New Zealand. Because the contents of MEGA folders are encrypted, the service is commonly used by child pornography traffickers.

**Factual Background**

On Wednesday, April 3, 2024, an FBI OCE was monitoring a public Kik group "Matt is my hero - #matt94"[2] from an office in Washington, D.C.   While monitoring the group, numerous users distributed child pornography both within the group and to the OCE in private messages.

On April 25, 2024, the OCE messaged the administrator of the group, whose username was "fudgepappa' and whose display name was "Fudgeppapa Fudge(lost all chats)."   As discussed below, the individual was later identified as the defendant, Khayan Garner.   The conversation, which continued through June 5, 2024, went as follows:

**OCE:**        What's up perv, love the Matt group.  35 dad dc

**Fudgepappa:** Dad 56 NJ

**OCE:**        What's going on.  How old are yours?  My son is 10.[3]  Active for awhile though

**Fudgepappa:** 56 my son is 27 today![4] We jerk together regularly

**OCE:**        Fuck yah.  Happy birthday to him and what a good dad

**Fudgepappa:** How did you begin?

**OCE:**        Started when he was super little.  Haven't stopped since

**Fudgepappa:** There?

---

[2] "Matt" and "94" are references to an individual named "Matthew Estes" who filmed himself raping a toddler boy.  The child pornography videos produced by Estes are commonly referred to as "Matt" videos, and the series has developed a cult following among individuals interested in the sexual abuse of prepubescent minor boys.  Individuals will use variants of Estes' name, the number "94" (Estes' high school football number), and the football emoji as coded references to child pornography involving prepubescent minor boys.

[3] The OCE's purported son is fictitious.

[4] Based on its later investigation, the government does not believe that the defendant has a son.

**OCE:**        Yep

**Fudgepappa:** I lost all my messages. How Did you and your son get started

**OCE:**        We never talked about it

**OCE:**        But I've been active for a long time.  He's 10 now

**Fudgepappa:** I know we haven't. I reached out to you to start talking about it because I was

**Fudgepappa:** Then I lost all my shit lol

**Fudgepappa:** I was active with my dad from age 1 till 19

**Fudgepappa:** Age 7.  Sorry

**OCE:**        Your dad is lucky

**OCE:**        Why'd it stop

**OCE:**        What's up perv

**Fudgepappa:** I stop with him after he had a stroke. Then he passed shortly after

**OCE:**        Sorry to hear that

**Fudgepappa:** It's all good. I had years to enjoy him

**OCE:**        Sounds gun.

**OCE:**        Whatcha looking to do on here?  Love perving out with other legit pervs

**Fudgepappa:** Talk shit. Talk about real incest experiences. Love meeting g guys who have stories to tell

**OCE:**        Mmmm nice

**OCE:**        I'm into more than stories

**Fudgepappa:** Like?

**OCE:**        Real deal experiences

**OCE:**        Sharing with other dads

3

**Fudgepappa:** Same

**OCE:**          Nice.

**OCE:**          I can help admin if you need it

**Fudgepappa:** Where

**OCE:**          Matt is my hero

**Fudgepappa:** Ok

**OCE:**          Sweet, any rules?

**Fudgepappa:** No rude behavior

**OCE:**          Have any fun lately?  I bet you have all the real good stuff

Fudgepappa's account was then suspended by Kik.  On June 26, 2024, the defendant contacted the OCE from a new Kik account with username and display name "FudgedPopz." FudgedPopz' profile page had a profile picture of an adult African American male's bare foot, and the description read:  "Formally known as Fudgepappa!  Got locked out of my account and lost all contacts and groups. Starting over."



The conversation, which continued for only that day, went as follows:

**FudgedPopz:** Hey bud. Be careful with guys who have profiles that one day old. That's how I got kicked out of the room. I was owner of the room for almost 2 years. Then some guy came in asking for links. As soon as I sent him a link. He reported me and I got my account banned. Then I had to start over and I lost all of my groups and all of my friends.I'm starting over. I had my account five years.

**FudgedPopz:** Usually, if they have a profile that only says one day and no photo I don't even acknowledge their existence.

**OCE:** Hey dude!  You're back!!!

**OCE:** Yah I'm just going to kick them all out

**FudgedPopz:** What's actually been happening is guys have been coming in, they've been posting links that aren't impressive. Then reporting those links, getting the links taken down and creates a need. Then we all start wanting to look at stuff, but the person that does the reporting is actually collecting everything so that they can try to sell it.instead of just posting stuff in the group or going on one a DM trade

**FudgedPopz:** Making it worse for everybody else

**OCE:** Yah…..sounds like a project.  Do you want me to add you back as admin?

**OCE:** Gotta make Matt great again

**FudgedPopz:** Sure. Thanks

**FudgedPopz:** [MegaLink beginning with Qq1HhJDA] Do you have this one?

**OCE:** Let me check

**OCE:** No I don't, thank you

The OCE opened the MegaLink and took a screen recording with his phone.  The title of the folder was "CP," which stands for "child pornography."  While the folder contains adult and age questionable content, it also contains numerous depictions of prepubescent minor boys engaged in sexually explicit conduct.  For example:

- **<u>VID_20230927_163610_115.mp4</u>** – a 4 minute 9 second video depicting a

prepubescent minor boy masturbating and being orally penetrated by an older male's erect penis

- **<u>VID_20230927_163103_089.mp4</u>** – a 6 minute 47 second video depicting a prepubescent minor boy being orally penetrated by an older male's erect penis

- **<u>VID_20231006_062041_170.mp4</u>** – a 1 minute 42 second video depicting a prepubescent minor boy being orally penetrated by another boy's erect penis

The FBI subpoenaed Kik for subscriber information on the "FudgedPopz" account. On July 1, 2024, Kik responded that the user's (unconfirmed) email was <u>khy.garner@gmail.com</u> and that the user's IP address (including around the time of the distribution) was 73.198.39.5, which is assigned to Comcast. The FBI then subpoenaed Comcast for the IP address 73.198.39.5. On July 8, 2024, Comcast responded that the IP was assigned to subscriber KHAYAN GARNER at an address in Woodbridge, New Jersey, with a telephone number with a 908 area code.

On July 4, 2024, the defendant contacted the OCE from a new Kik account with username and display name "Fudge8x6." As with FudgedPopz' profile page, Fudge8x6's profile page had a profile picture of an adult African American male's bare feet.



Info



Fudge8x6

Fudge8x6

📅 14 Days on Kik

The conversation, which continued through July 15, 2024, went as follows:

**Fudge8x6:**    That guy Sailor is trouble. He needs to get bounced

**OCE:**    Man did not see this

**Fudge8x6:**    I really think there needs to be a private thread for those who are always here.the new profiles that are only one day are created by the same people that leave. They just come back as different profiles, but will type the exact same words. Anybody that comes in begging for the videos and they've only been here one day. I am very suspicious of. There are a lot of spies around now looking to take people down.

**OCE:**    Yahhhh im surprised my account is still up, I thought I'd come back on and it would be gone

The defendant added the OCE to a private group chat with two other people to discuss other members in the "Matt is my hero" group. On July 14, 2024, "Fudge8x6" sent a message that read "This was posted in Matt 94" and then a MegaLink beginning with "kjlXHRLb." The link contained numerous child pornography video files, including:

- **(pt)`` p101 mikael bound01 pthc gay boy college dude fucks his little brother.mp4** – a 6 second video clip depicting an adult male anally penetrating a prepubescent minor boy

- **10yo Ben - boy sent from heaven.mp4** – a 13 minute 24 second video depicting a prepubescent boy masturbating

- **253.mp4** – an 8 minute 9 second video depicting prepubescent boys masturbating and being orally and anally penetrated by an older male's penis

- **573.mp4** – a 9 minute 49 second video depicting a prepubescent minor girl being orally and vaginally penetrated by a prepubescent minor boy

- **10 takes dad (1).mp4** – a 14 second video depicting a prepubescent minor boy being anally penetrated by an adult male's erect penis

As discussed below, New Jersey state authorities were conducting a parallel investigation and searched the defendant's iPhone pursuant to a search warrant issued by the Superior Court of New Jersey for Middlesex County and found evidence of the Fudgepappa, FudgedPopz, and

Fudge8x6 accounts on the defendant's iPhone. In addition, Detective Kayla Hueston of the Middlesex County Prosecutor's Office has confirmed that the rug and coffee table in the background of the Fudge8x6 profile picture included above is from the defendant's living room.

### *The Parallel New Jersey Investigation*

In June and July 2024, Kik submitted two CyberTipline Reports ("CyberTips") to the National Center for Missing and Exploited Children concerning the defendant.

On June 17, 2024, Kik reported in CyberTip 195261135 that the "Fudgepappa" account had distributed nine (9) apparent child pornography files to other Kik users on June 14 and 15, 2024. The IP address was 73.198.39.5, which, as described above, resolves to the defendant at his Woodbridge, New Jersey, address.

On July 1, 2024, Kik reported in CyberTip 196000784 that the "FudgedPopz" account had distributed four (4) apparent child pornogrpahy files to other Kik users in the early morning hours of June 27, 2024. (This was mere hours after the defendant distributed child pornography to OCE using the same account.) The IP address was the same. (73.198.39.5.)

NCMEC made the CyberTips available to the New Jersey Internet Crimes Against Children Task Force and forwarded them to Detective Kayla Hueston with the Middlesex County Prosecutor's Office. On October 2, 2024, Detective Hueston obtained search warrants from the Superior Court of New Jersey for Middlesex County to search the defendant's person and apartment (the Woodbridge, New Jersey, address on his Comcast account) and to search electronic devices seized within the premises.

On October 3, 2024, Detective Hueston and other law enforcment officers executed the search warrant at the defendant's residence in Woodbridge. According to Detective Hueston, it took the defendant approximately one minute to come to the door. During the search, Detective

Hueston observed an iPhone charger on the defendant's sofa but was unable to locate an iPhone. The defendant claimed that his iPhone had been stolen the day before. Detective Hueston called the defendant's telephone number and could hear the phone ringing. The phone was located in a grassy area outside the apartment building—it appeared that the defendant had tossed the phone off his balcony before opening the door for police. (Law enforcement was not covering the area off the balcony and did not observe the defendant toss the phone, but it is a reasonable inference that he did so given that he had an opportunity to discard the phone in that location and was untruthful about it having been stolen.)

Detective Hueston searched the defendant's iPhone pursuant to the New Jersey warrant. The phone contained, among other things, user attribution including selfies of the defendant, child pornography, and evidence of Telegram and Kik usage. Specifically, a review of the phone shows that the defendant used the Kik accounts Fudgepappa, FudgedPopz, and Fudge8x6 on the phone. In addition, the khy.garner@gmail.com account (used to register the FudgedPopz Kik account) was found on the defendant's iPhone and Acer laptop.

### Procedural History

On November 21, 2024, a federal grand jury returned an indictment charging the defendant with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(1), (b)(2). The Honorable G. Michael Harvey issued an arrest warrant.

On November 27, 2024, the defendant was arrested in New Jersey and appeared in the U.S. District Court for the District of New Jersey for a Rule 5 hearing. The defendant waived the hearing and consented to detention.

On December 17, 2024, the defendant made his initial appearance in this District and was arraigned. At the initial appearance and arraignment, the United States moved for pretrial

detention, as the defendant has been charged with a crime of violence.  *See* 18 U.S.C. § 3142(f)(1)(A).  A detention hearing is scheduled for December 19, 2024.

The government now respectfully submits this Memorandum in support of its Motion for Pretrial Detention.

### Applicable Legal Standard

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial.  18 U.S.C. § 3142(e).  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"  *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).  As a threshold matter, the government must demonstrate by a preponderance of the evidence that a defendant is a flight risk, *see United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996)), and by clear and convincing evidence that he is a danger to the community, *see* 18 U.S.C. § 3142(f).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

Here, because distribution of child pornography is a crime of violence involving a minor victim, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(E).  This presumption "operate[s] at a minimum

to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"). But even if the defense produces credible evidence, the presumption retains evidentiary weight and is considered by the Court among the Section 3142(g) factors. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' . . . The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See*

*Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

<u>**Argument**</u>

For reasons that follow, there are no conditions of release adequate to reasonably assure community safety, and this Court should detain the defendant pending trial.

**A.  Nature and Circumstances of the Charged Offense**

The defendant's alleged conduct in this case is extremely harmful and dangerous to the community, as it propagates, and thus fuels demand for, videos depicting the rape and sexual abuse of the most vulnerable members of our community—very young children.  This factor weighs heavily in favor of detention.  "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms."  *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing magistrate court's release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same).  Children captured in images and videos depicting their sexual abuse are significantly harmed at the time that the images and videos are created, and they are re-victimized and re-traumatized every time an individual, such as the defendant, views and shares these images for his own sexual gratification and for the sexual gratification of others.  *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting U.S. Sent'g Comm'n, Federal Child Pornography Offenses (Dec. 2012) at vii); *Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL

4964505, at *4 (same).

The defendant's conduct in this case was particularly egregious in that it involved the distribution of videos and images depicting the rape and sadistic sexual abuse of prepubescent boys. Worse yet, the defendant was the administrator of a Kik group that lionized a notorious child rapist and was dedicated to the exchange of child pornography.

The seriousness of the offense is also reflected by Congress's judgment that those charged with distributing child pornography should be presumed detained pending trial, *see* 18 U.S.C. § 3142(e)(3)(E), and are subject to a five-year mandatory minimum term of imprisonment upon conviction, *see* 18 U.S.C. § 2252(b)(1).

The Sentencing Guidelines also recognize the serious nature of the offense that the defendant is charged with, which include offense-level enhancements for material involving a prepubescent minor, *see* USSG §2G2.2(b)(2), and material that portrays sadistic or masochistic conduct or sexual exploitation of an infant or toddler, *see* USSG §2G2.2(b)(4). The guidelines provide additional enhancements for engaging in the knowing distribution of such material for valuable consideration (which can include receiving child pornography in exchange), *see* USSG §2G2.2(b)(3)(B), for using a computer or interactive computer service to do so, *see* USSG §2G2.2(b)(6), and for the number of images, *see* USSG § 2G2.2(b)(7)(C). Based on the evidence available at this early stage of the case, the United States estimates that, following a trial, the defendant's total offense level under the guidelines would be at least 40, yielding an estimated guidelines range of 292 to 365 months' imprisonment (i.e., approximately 24 to 30 years' imprisonment), which further reflects the very serious nature of the offense conduct. Even after a guilty plea, and accounting for acceptance of responsibility, the defendant's total offense level would be 37, yielding an estimated guidelines range of 210 to 262 months' imprisonment (i.e.,

approximately 17.5 to 22 years).  Accordingly, the nature and circumstances of the defendant's offense weigh heavily in favor of detention.

### B.  The Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention.  The evidence against the defendant is strong.  As detailed above, the defendant distributed child pornography from a Kik account that he registered using an email address containing his name, and the IP address resolved to his Comcast internet account.  In addition, New Jersey state authorities served a search warrant at the defendant's Woodbridge, New Jersey, residence.  The defendant attempted to obstruct the investigation by tossing his iPhone off a balcony and telling police that it had been stolen.  The phone was recovered, and it contained evidence of the Kik accounts that the defendant used to distribute child pornography.

While some judges in this Court have indicated that this factor should be given less weight, in *United States Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023) (Howell, C.J.).  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."  *Id.* at *10.  In an unpublished opinion, the D.C. Circuit affirmed then–Chief Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  The Second Circuit reached the same decision after a thorough and careful analysis of the issue.  *United States v. Zhe Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022).  This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10.  This is such a case, and the defendant should be detained pending trial.

### C.  The History and Characteristics of the Defendant

Although the defendant has no known criminal history, his conduct was serious and reflects a longstanding interest in child pornography:  the defendant told the OCE that he had been using one of the Kik accounts that was banned for five years and had been running the Matt group for two years.  What is also particularly concerning about the defendant's conduct is that he was conscious of the fact that Kik banned him and kept coming back onto the platform with different usernames to engage in the exact same criminal conduct.  The defendant was happy to have the OCE add him back as an administrator of the Matt group and even gave the OCE tips on how to avoid being banned.  The fact that the defendant knew his conduct was wrong and continued to engage it in anyway shows that the defendant cannot be trusted to abide by any release conditions.

This factor also weighs in favor of detention.

### D.  The Nature and Seriousness of the Danger to any Person or the Community

The facts and evidence in this case establish that the defendant poses a grave danger to the community.  As discussed above, the distribution of child pornography results in severe mental, emotional, and physical trauma to the children who are victimized by offenders such as the defendant, who seek to achieve sexual gratification through viewing and sharing of images depicting the sexual abuse of children.  The defendant, as a consumer and trafficker of child pornography, furthers the demand for new material depicting the graphic sexual exploitation and

sexual abuse of vulnerable children.  It is precisely "[t]hese significant harms and dangers [that] animated the Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at \*7; *Nickelson*, 2018 WL 4964506, at \*5 (noting also Congress's creation of significant statutory mandatory minimum penalties); *Blanchard*, 2018 WL 4964505, at \*4 (same).

As described above, the defendant did not merely possess sadistic child pornography depicting the rape of prepubescent boys—he sought out others who share his sexual interest in children, running a Kik group that glorified a notorious child rapist and was dedicated to the exchange of child pornography.

The defendant did not give a second thought to sharing hardcore child pornography online and creating an online community for others to do the same.  He distributed large quanitites of graphic child pornography repeatedly, even after Kik suspended multiple of his accounts.  The totality of his conduct demonstrates that he poses an unmitigable danger to the community.  There is no condition or combination of conditions that could reasonably assure community safety were the defendant to be released.  This Court should order that he remain detained pending trial.

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court order that Defendant Khayan Garner remain detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Dated: December 18, 2024    By:    /s/ *Paul V. Courtney*
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1719
Paul.Courtney@usdoj.gov